UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SURESH KURMA | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 12-11810-DPW |
| v. | ) | |
| | ) | |
| STARMARK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER
February 9, 2016

Plaintiff Suresh Kurma's son was born approximately two months premature.  He was immediately hospitalized and he remained in intensive care for over two months.  His hospital bills ran in excess of $667,000.  At the time, Mr. Kurma was a participant in a health care plan for which the defendant, Starmark, Inc., was the claims processor.

Starmark has denied coverage for the hospitalization of Mr. Kurma's newborn son because the child was not properly enrolled in the health care plan.  Starmark contends that Mr. Kurma failed to notify his employer, First Tek Technologies, Inc. ("First Tek") of the birth within 30 days as required for coverage by the terms of the health care plan.  Mr. Kurma has filed suit pursuant to the Employee Retirement Income Security Act seeking to recover health benefits for his son.

I have kept this matter under advisement for an extended period of time in an effort to assure there is no basis available for challenging the fact, which remains undisputed on this record, that Mr. Kurma's employer was not notified of the birth of his son within 30 days or that application of the plain language of the plan, which requires specific notification to the employer even if notice has been provided to the claims processor, is appropriate.  I have neither been directed to nor found any such basis and consequently will grant summary judgment to the claims processor.

## I. BACKGROUND

### A.   *Factual Background*

#### 1.   Birth and Admission to the NICU

Mr. Kurma has been an employee of First Tek since 2006. Mr. Kurma was enrolled in the First Tek, Inc. Bluesoft Group Health Benefit Plan ("the Plan") beginning on July 1, 2010, the date that First Tek adopted this plan.  Mr. Kurma's wife, Sailaja Yeddu, and their five-year-old son, were covered under the Plan from that same date.  When his wife became pregnant in the early part of 2010, her pregnancy-related health care was covered by the Plan from July 1, 2010.

On October 7, 2010, his wife went into premature labor and their son "Baby Boy,"[1] was born that day at Brigham & Women's Hospital. He was admitted into the Neonatal Intensive Care Unit ("NICU") immediately upon his birth, where he remained under care until his discharge on December 16, 2010.

2.   Terms of the Plan

The Plan allows for coverage for newborn children of plan participants, such as Baby Boy. The Plan states:

> A child born to You while Your coverage is in force is covered from the moment of birth if You notify Us and the Claims Processor of the birth and pay any additional contribution amount required within 30 days after the date of birth in order for coverage to become effective. The newborn is covered for 30 days after the date of birth for all such Benefits provided for Dependents. If you reject Dependent coverage and later want to cover Dependents, Your Dependents may be considered Late Enrollees.

In the Plan, "We, Us, and Our" refer to the Plan Sponsor, First Tek, and "You and Your" refer to the Plan participant, Mr. Kurma. The claims processor is Starmark. No benefits are paid under the Plan for services provided prior to the effective date of a person's coverage.

The Plan also provides language concerning the discretion granted to both First Tek, as the plan sponsor, and Starmark, as

---

[1] The name of Mr. Kurma and Ms. Yeddu's son is redacted in the record materials presented to me. I will refer to the child as "Baby Boy" in this opinion.

the claims processor. Under the heading "Miscellaneous Provisions," the Plan states:

> We [First Tek] have full, exclusive and discretionary authority to determine all questions arising in connection with this Contract including its interpretation.
>
> The Claims Processor [Starmark] has full, discretionary and final authority for construing the terms of the Plan and for making final determinations as to appeals of benefit claim determinations as described in the Claim Review and Appeals Section of this Plan Document.  The Claims Processor is considered a fiduciary with respect to any claim prior to a request for its appeal.

### 3.  Communications Between Mr. Kurma and Starmark Between Baby Boy's Birth and His Enrollment

There is no dispute that Starmark was timely notified of Baby Boy's birth.  Mr. Kurma asserts that he first contacted Starmark on October 14, 2010 informing it of the birth of his son and his son's admission to the NICU.  During this conversation, Mr. Kurma says that he was not informed by the Starmark representative that he was required to inform his employer of his son's birth or fill out any forms in order to obtain insurance coverage.  Starmark denies this conversation took place, and there is no evidence in the administrative record, other than the second-hand report of Mr. Kurma's lawyer restating Mr. Kurma's recollection in a letter to Starmark, to show that this conversation occurred.[2]

---

[2] Starmark does not dispute, nevertheless, that *it* was notified in a timely manner under the terms of the Plan of the birth of

On October 21, 2010, Mr. Kurma received a letter from CoreSource, Inc., an affiliate of Starmark.  That letter identified Mr. Kurma as the health care plan enrollee, identified the patient as "Baby Boy," bore the same reference number provided to the Hospital, and identified the admission date as October 7, 2010 (Baby Boy's birthdate).  In this letter, CoreSource requested additional medical information be sent from the provider, in order to make a determination of medical necessity for the ongoing treatment.  The letter was not a denial of health services and did not identify any issues beyond those of medical necessity; it did not indicate that Baby Boy was or was not enrolled in the health plan.

On October 22, 2010, a telephone call took place between Mr. Kurma and a case manager from Starmark.  According to Starmark's internal case notes, "Mr. Kurma inquired how to add his son to the policy."  The Starmark representative "discussed with Mr. Kurma importance of contacting his human resources department to complete the necessary paperwork" and "advised the paperwork usually needs to be completed within 30 days."  The representative further indicated that Mr. Kurma responded with "verbalized understanding and agreement."  Mr. Kurma, however, denies that he was told of any deadline for notifying his

---

Mr. Kurma's son.  The consequences of the failure to notify *First Tek* in a timely manner are what is at issue in this case.

employer or told that a written form was required in order to do
so.

On October 25, 2010, Deborah Fogal, the Starmark case
manager for Baby Boy's claims, spoke again with Mr. Kurma.  She
wrote in an internal email summarizing the discussion that Mr.
Kurma "indicated the plan is to add the baby to his policy."
There is no record that Fogal told Mr. Kurma to notify his
employer of his son's birth and Mr. Kurma asserts that Fogal in
fact did not discuss the need for notice with him.

On November 8, 2010 – more than 30 days after the birth of
Baby Boy – Starmark sent to Mr. Kurma a document titled
"Certificate of Group Coverage."  The certificate states that it
"is evidence of your coverage under this plan."  It identifies
Suresh Kurma as the plan participant, includes Baby Boy as the
individual to whom the certificate applies, and then gives the
dates of coverage.  The "Date coverage began" is given as
October 7, 2010, the date of Baby Boy's birth, and the "Date
coverage ended" is given anachronistically as October 6, 2010,
the day *before* he was born.  Much later, in a letter to Mr.
Kurma's attorney, Starmark explained that this was "not a
typographical error" but the company's method of showing that
coverage never began.

Beyond Starmark's communications with Mr. Kurma, there were
also internal Starmark communications of relevance during this

6

period.  In particular, on November 4, 2010, an internal claim
note refers to Baby Boy as the "insured" in describing his
claims and treatment.  That claim note states: "**Of note:
Newborn mandated coverage for the first 31 days – official
enrollment into the plan is then needed for continued coverage."
However, a manager responded to that note the following day with
a correction: "This is a healthy incentive 2 policy (ASO),
mandated coverage for the first 31 days does not apply.  We will
need enrollment on file to consider the claims."

    4.   <u>Notice and Enrollment</u>

Finally, Starmark called Mr. Kurma on November 29, 2010.
In that conversation, Mr. Kurma stated that he had added Baby
Boy to his policy, according to internal Starmark case notes.
Later that night, Mr. Kurma emailed Shital Shah at First Tek and
asked him to "add my new born baby boy to my health insurance
plan."  There is no earlier identified provision by Mr. Kurma of
notice of Baby Boy's birth to First Tek in the record.

Mr. Shah then forwarded the email to Melisa Vilano at CG
Benefits Group, the broker for First Tek, writing "Please see
the attached and add Suresh Kurma's new born Son effective
10/7/2010.  Suresh Kurma is enrolled in Starmark Insurance.
Please let me know if you have any questions."  Ms. Vilano
replied on December 14, 2010 that "Baby is enrolled 1/1/2011.
Babies must be added within 31 days of birth."

Mr. Kurma completed paperwork to add Baby Boy to his policy on December 6, 2010, including a Special Enrollee Form.  Under the Plan, special enrollees are those for whom coverage was initially declined and who are later added to coverage.  Special enrollees are described in a different provision of the Plan from that which describes the process for adding coverage for a newborn immediately from his birth.  This paperwork appears to be what ultimately activated coverage for Baby Boy at the beginning of the next month.

### 5.   Denial of Benefits

In late December of 2010, Mr. Kurma was informed by his employer that Starmark was denying coverage of the expenses accrued during Baby Boy's hospitalization.  He was told that this was because the written enrollment forms were not returned to the employer within the required time period.  This was the first time that Mr. Kurma was informed that Starmark actually denied benefits because Mr. Kurma had failed to notify First Tek in a timely manner of the birth of his son.  Mr. Kurma called Starmark on December 21, 2010.  A case management note from Starmark indicates "He was very upset that his newborn was not added as the DOB. I explained to him that the enrollment form was not rcvd in time so the child was enrolled late."

On January 13, 2011, Starmark sent Mr. Kurma eight explanation of benefits forms indicating that it would not pay

for the cost of the treatment incurred during Baby Boy's
hospitalization at the Brigham & Women's NICU.  Each form
indicated that patient was "effective with Starmark 1/01/2011"
and the reason for denial of coverage was that the claim was for
treatment "before dependent's effective date."  The bills from
Brigham & Women's Hospital for which Starmark has denied
coverage total $667,457.62.

On February 3, 2011, Christopher Tighe, a human resources
manager at First Tek, called Jerel Levenson, a representative at
First Tek's broker, CG Benefits Group, to inquire about why Mr.
Kurma's son had not been enrolled in the Plan.  Mr. Levenson
responded with an email to Mr. Tighe and Kumar Bhavanasi, the
CEO of First Tek, in which he wrote that:

> An employee has 31 days to add child to insurance, once
> Starmark is notified via enrollment form, child is covered
> from date of birth.
>
> Failure to notify company within 31 days, child can only be
> added first of month after notification. . . .
>
> Mr. Kurma, is stating that he called Starmark himself to
> add child.
>
> Starmark customer service would have advised him that a
> form needed to be submitted through company HR department.
>
> This is standard protocol and is never deviated or
> exemptions made to this rule.
>
> Thus he is not telling correct story, responsibility was on
> Mr. Kurma to add child within allotted time frame, in his
> benefit booklet, that he received at home, all of this was
> detailed.

> Mr. Kurma did not act accordingly and the rules were all followed in this case and everyone did exactly what they were supposed to do.  Thus any claims incurred are his responsibility and his alone.

Mr. Bhavanasi responded by writing that "[Mr. Kurma] has a prematurely born child who is still in hospital and in deep sorrow and was not in a right frame of mind. Is there any thing you can do to make the carrier make an exception?"  In the subsequent chain of emails, this request was rejected.

In October 2011, counsel for Mr. Kurma sent a letter to Starmark's grievance review department, recounting the facts above and requesting that Starmark reconsider its decision to deny coverage of the expenses incurred during Baby Boy's hospitalization.  After receiving no response from Starmark, counsel for Mr. Kurma sent a second letter dated February 8, 2012, requesting a response to his previous letter.  On April 2, 2012, a paralegal for the Trustmark Companies responded with a letter explaining the basis for the denial of benefits.  The letter stated that Mr. Kurma had failed to meet the notification requirements for timely enrollment of his son in the plan: "The plan required that Mr. Kurma notify Starmark AND his employer, within 30 days after the infant's date of birth.  Starmark received notification within the required time frame, but First Tek did not . . . First Tek received email notification from Mr. Kurma regarding the birth on November 29, 2010."

**B.  *Procedural Background***

Mr. Kurma filed this suit on September 28, 2012.  The
parties have agreed that the case is governed by ERISA, 29
U.S.C. § 1001, et seq. and have agreed that this case is ripe
for decision based upon the administrative record that was filed
by the parties.

At a hearing on the motion for summary judgment filed by
Starmark, I directed the parties to contact First Tek, which is
not a party to this proceeding, to obtain their view regarding
the appropriate interpretation of the relevant terms of the Plan
and regarding the appropriate resolution of this matter.  First
Tek has declined to respond to inquiries from the parties.
Accordingly, pursuant to an order of March 21, 2014 related to
the solicitation of First Tek's views, I deem the silence of
First Tek to be ratification of Starmark's determination on
those matters.

## II. STANDARD OF REVIEW

This denial-of-benefits claim arises under 29 U.S.C. §
1132(a)(1)(B).  "ERISA cases are generally decided on the
administrative record without discovery," *Morales–Alejandro* v.
*Med. Card Sys., Inc*., 486 F.3d 693, 698 (1st Cir. 2007), and the
parties have agreed that such a procedure is appropriate in this
case.

11

Under *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989), a denial of benefits, challenged under ERISA, is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See also Brigham* v. *Sun Life of Canada*, 317 F.3d 72, 80 (1st Cir. 2003) ("We have steadfastly applied *Firestone* to mandate de novo review of benefits determinations unless a benefits plan ... clearly grant[s] discretionary authority to the administrator.") (internal citations and quotation marks omitted).  When a grant of discretionary authority is found, the denial decision is afforded a more deferential standard of judicial review.  This review has been referred to by a number of names, including "arbitrary and capricious."  *Id*.  Regardless of its label, such review looks to whether a decisionmaker abused its discretion by making a "determination [that] was unreasonable in light of the information available to it." *Pari-Fasano* v. *ITT Hartford Life and Acc. Ins. Co.*, 230 F.3d 415, 419 (1st Cir. 2000).  While there "are no required 'magic words,'" and "'language that falls short of th[e] ideal' can suffice," the First Circuit has required a "clear grant of discretion" and "more than subtle inferences drawn from . . .

unrevealing language."  Gross v. Sun Life Assur. Co. of Canada,
734 F.3d 1, 13, 16 (1st Cir. 2013).[3]

The Plan at issue here gives two – arguably inconsistent –
grants of discretion, one to First Tek and one to Starmark.
First Tek is given "full, *exclusive* and discretionary authority
to determine all questions arising in connection with this
Contract including its interpretation" (emphasis added).  The
exclusive grant to First Tek is belied by the fact that Starmark
is also given "full, discretionary and *final* authority for
construing the terms of the Plan and for making final
determinations as to appeals of benefit claim determinations as
described in the Claim Review and Appeals section of this Plan
Document (emphasis added)."  These provisions are undoubtedly
clear in their invocation of discretion, but their interaction
is less self-evident.  There is nothing inherently problematic

---

[3] Plaintiff also contends that Starmark's alleged violations of
the procedural requirements of ERISA preclude deferential
review, citing a pair of Tenth Circuit opinions.  *LaAsmar* v.
*Phelps Dodge Corp. Life & Accident, Death & Dismemberment &
Dependent Life Plan*, 605 F.3d 78, 797-799 (10th Cir. 2010);
*Rasanack ex rel. Tribolet* v. *AIG Life Ins. Co.*, 585 F.3d 1311,
1316 (10th Cir. 2009).  This is not the law in the First
Circuit, which analyzes the effect of procedural violations on a
case-by-case basis.  *Bard* v. *Boston Shipping Ass'n*, 471 F.3d
229, 236 (1st Cir. 2006).  The procedural irregularities
alleged, such as late or incomplete notices of an adverse appeal
determination, have no "connection to the substantive decision
reached" and do not "call into question the integrity of the
benefits-denial decision itself." *Id.* at 244.  Consequently, I
do not find those allegations – the validity of which I do not
reach – relevant to the standard of review.

about a plan which divides discretion between multiple

decisionmakers. *Fendler* v. *CNA Grp. Life Assur. Co*, 247 F.

App'x 754, 759 (6th Cir. 2007).   Nevertheless, the complications

created by the relationship between the two provisions reduces

the clarity required for deferential review.

However, I conclude that de novo review of Starmark's

interpretations of the Plan is appropriate here.   To be sure,

both companies are given discretion over the interpretation of

the Plan.   Those grants are on their face conflicting and even

self-contradictory.   First Tek is stated to have "exclusive"

authority over interpretation, while Starmark is given "final"

authority.   Both cannot be true: whose interpretation would

govern in a dispute?   The answer is not clear enough, under

*Gross*, to merit deferential review.

As for the application of the Plan in this matter, I find

the division of labor and of discretion between First Tek and

Starmark sufficiently legible to apply deferential review.

These provisions give Starmark – the claims processor –

discretion over claim determinations.[4]   I read this specific

---

[4] More precisely, the Plan only gives Starmark discretion over
"final determinations as to appeals of benefit claim
determinations" and does not mention initial benefit claim
determinations.   In a denial-of-benefits suit, only the final
decision is under review.   *See Terry* v. *Bayer Corp.*, 145 F.3d
28, 35-36 (1st Cir. 1998).   In any event, First Tek has
acquiesced by its silence in the determination before me here.

provision as a modification of the more general grant of discretion to First Tek. *See Cent. Int'l Co*. v. *Kemper Nat. Ins. Companies*, 202 F.3d 372, 374 (1st Cir. 2000) ("Normally, specific language is treated as a limitation on general language") (citing Restatement (Second) of Contracts § 203(c) (1979)).  In this setting, Starmark is entitled to deferential review on its claim determinations, if not for other elements of the benefits process.

Starmark is not owed any deference for a determination that Baby Boy was enrolled in the Plan; the fact of enrollment was within the discretion of First Tek.  But Starmark's application of that undisputed fact in denying benefits is entitled to deference.[5]  Consequently, for purposes of this dispute, so long as Starmark acted reasonably, under the terms of the Plan, in denying benefits based on the lack of enrollment, it is entitled to summary judgment.[6]

### III. ANALYSIS

### A.   *Application of the Plan's Provision for Newborn Coverage*

The Plan unambiguously provides a mechanism by which

---

[5] Contrary to Plaintiff's assertions, I find no evidence that Starmark improperly delegated this decision to any of its affiliates or third parties.  The record shows that relevant decisions were made by Starmark and the relevant communications came from Starmark.

[6] I must note, however, that whether I applied *de novo* or deferential review, the outcome in this litigation would remain the same.

covered parents can enroll their newborn children in the Plan.
A newborn is "covered from the moment of birth if You notify Us
and the Claims Processor of the birth and pay any additional
contribution amount required within 30 days after the date of
birth."  The term "Us" is defined to mean First Tek.  The basic
meaning of this provision is clear: Baby Boy was covered only if
Mr. Kurma provided some notice of the birth to both his
employer, First Tek, and to Starmark.  I must "accord an ERISA
plan's unambiguous language its plain and ordinary meaning."
*Forcier* v. *Metro Life Insurance Co.*, 469 F.3d 178, 185 (1st Cir.
2006).

There is no material dispute about which notices were
provided to which entity and therefore no real dispute about the
effect of this Plan provision.  The parties agree that Mr. Kurma
notified Starmark of his son's birth within 30 days of the
birth.  And the parties agree that notice was first given to
First Tek on November 29, 2010: 49 days after the birth.  While
the Plan may be ambiguous with regards to the form of notice
required – plaintiff has pressed the issue whether written
notice was required or whether a particular form had to be used
– those ambiguities are immaterial to this dispute.  No notice
of any kind was given to First Tek in the relevant 30 day
period.  Accordingly, this provision did not give Baby Boy
coverage under the Plan.

To a significant degree, the application of this provision decides the case.  In a denial-of-benefits suit, "the central issue must always be what the plan promised … and whether the plan delivered." *Liston* v. *Unum Corp. Officer Severance Plan*, 330 F.3d 19, 25 (1st Cir. 2003).  The plan did not promise Mr. Kurma coverage for his son without both notices; it delivered on the promises it did make by allowing the eventual enrollment of Baby Boy as a late "special enrollee" with coverage effective January 1, 2011.  *Compare Jersey City Incinerator Auth.* v. *Bp Inc.*, No. 10-56 (JLL), 2010 WL 778259, at *3 (D.N.J. Mar. 8, 2010) (upholding benefit denial where newborn not enrolled according to procedure set forth in plan); *Crews* v. *Sara Lee Corp.*, No. 08-CV-113-LRR, 2010 WL 3000378, at *8 (N.D. Iowa July 27, 2010) (same).  The Plan set up a mechanism to enroll newborns; Mr. Kurma failed to engage that mechanism properly and Starmark was entitled to deny coverage on those grounds.

**B.    *Alternative Theories of Coverage***

Given the harsh effects of applying the Plan, Mr. Kurma understandably advances various methods for avoiding the plan's plain language.  None is effective.

Mr. Kurma argues that First Tek, which had discretion over enrollment matters, wanted Baby Boy to be covered, as evidenced

by its eventual requests for coverage from Starmark.[7]   But
discretion does not allow a plan administrator to make an end
run around the Plan documents.   "Informal communications cannot
alter the clear and unambiguous terms of the Plan."  *Fenton* v.
*John Hancock Mut. Life Ins. Co.*, 400 F.3d 83, 89 (1st Cir.
2005), *quoting Perry* v. *New England Bus. Serv., Inc.*, 347 F.3d
343, 346 & n. 3 (1st Cir. 2003) (internal quotations omitted).
*Cf. Epright* v. *Envtl. Res. Mgmt., Inc. Health & Welfare Plan*, 81
F.3d 335, 339 (3d Cir. 1996) (interpretation of plan
administrator with discretion, extrinsic evidence, and past
practice all "of no significance where the plan document is
clear.").

Likewise, Mr. Kurma cannot establish that Starmark is
estopped from denying coverage based on a lack of notice to
First Tek.   The First Circuit has not yet decided whether it
recognizes estoppel claims under ERISA's civil enforcement
provisions.   *Livick* v. *The Gillette Co.*, 524 F.3d 24, 31 (1st
Cir. 2008).   But it has made clear that ERISA estoppel claims
could only be recognized "when the plan terms are ambiguous."
*Id.*   "[A] plan beneficiary might reasonably rely on an informal

---

[7] The requests were made well after the relevant period and were
denied by Starmark.   In any event, given First Tek's formal
position in connection with this litigation, as framed by its
failure to respond for a statement of position, First Tek has
declined to challenge Starmark's determination to deny the
claims.

statement interpreting an *ambiguous* plan provision; if the provision is clear, however, an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable." *Id.* Here, the plan terms are unambiguous: notice was required to both First Tek and Starmark. Likewise, in *Todisco* v. *Verizon Communications, Inc.*, the First Circuit explained that ERISA only allows suit for benefits due "under the terms of the plan." 497 F.3d 95, 101 (1st Cir. 2007). *Todisco* rejects precisely the argument that Mr. Kurma now undertakes to make. "Because the plan's language is clear, and because [plaintiff] indisputably did not take the actions that this language required, plaintiff cannot reasonably claim that [his] suit is a suit for benefits due under the terms of the plan." *Id.* An estoppel theory cannot support Mr. Kurma's claim.[8]

---

[8] Nor is it obvious that this would be the only bar to an estoppel claim. Estoppel requires "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced" and in the ERISA context, the additional factor of "extraordinary circumstances." *Devlin* v. *Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001). *See also Hooven* v. *Exxon Mobil Corp.*, 465 F.3d 566, 571 & n.4 (3d Cir. 2006). Given the evidence in record, it is difficult to see what promise Mr. Kurma could seek to enforce. Starmark never told him that his son was covered or that he did not need to notify his employer. The closest thing to such a promise was the certificate of coverage Starmark provided Mr. Kurma, which confusingly purported to evidence Baby Boy's coverage under the Plan, but for a negative period of time. But, in addition to its peculiar recital of dates showing no actual coverage period, this certificate was issued after the

Mr. Kurma makes an argument related to estoppel by invoking *Epright* v. *Envtl. Res. Mgmt., Inc. Health & Welfare Plan*, 81 F.3d 335, 339 (3d Cir. 1996).  There, the Third Circuit held that a failure to complete required enrollment forms did not deny an employee coverage where the failure was the fault of the plan administrator.  Putting aside whether Mr. Kurma's failure to notify First Tek could be excused under Third Circuit law, it is clear that this cannot be done in the First Circuit.  The First Circuit has discussed *Epright* and other similar cases and noted that employees can only benefit under such doctrines in "egregious cases in which the company took wrongful affirmative action or made misrepresentations that interfered with benefits."  *Green* v. *ExxonMobil Corp.*, 470 F.3d 415, 420 & n.4. Even under plaintiff's report, however, the most that Starmark did is fail to inform Mr. Kurma of his obligation to notify First Tek (although there is disputed record evidence suggesting that Starmark *did* inform Mr. Kurma of this, in the October 22 phone call).  There was no affirmative action or misrepresentation here; there was, at worst, a failure to inform Mr. Kurma about what the Plan unambiguously required.

Such a failure to inform is not actionable here.  Under procedural provisions of ERISA which are not directly at issue

_____

30-day period, meaning that there could not have been reliance on it in any event.

in this case, for example, "courts have almost uniformly rejected claims by plan participants or beneficiaries that an ERISA administrator has to volunteer individualized information taking account of their peculiar circumstances." *Barrs* v. *Lockheed Martin*, 287 F.3d 202, 207-08 (1st Cir. 2002). Generally, a failure to inform is only a breach of fiduciary duty where there is "bad faith, concealment or fraud," or where the information previously provided made it impossible for the employee to understand the terms of his plan otherwise. *Watson* v. *Deaconess Waltham Hosp.*, 298 F.3d 102, 113-16 (1st Cir. 2002). There is no evidence of bad faith, concealment or fraud, and the Plan documents clearly stated the requirements for newborn coverage.

The limited rights to information specified by ERISA allow for claims against the plan administrator, not against distinct entities — like the claims processors — which have no obligation to provide that information. *Cf. Law* v. *Ernst & Young*, 956 F.2d 364, 374 (1st Cir. 1992); *see also Moran* v. *Aetna Life Ins. Co.*, 872 F.2d 296, 299-300 (9th Cir. 1989) ("Congress has provided for three classes of persons who may be sued as the plan administrator under section 1132(c). Because Aetna was not designated as plan administrator in the policy and is not the plan sponsor, it is not liable under the statute"); *Davis* v. *Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1138 n.5 (D.C. Cir. 1989)

("We are unmoved by the Davises' argument that Liberty Mutual should be held liable, as a fiduciary, for failure to supply a summary plan description. . . . we decline this invitation to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the 'administrator.'").  Given that Starmark had no statutory duty to inform Mr. Kurma of his need to notify First Tek of his son's birth, Starmark's purported failure to do so cannot create a substantive duty to cover Mr. Kurma's son.

### IV. CONCLUSION

The plain text of the Plan requires that notice of a newborn's birth be provided within 30 days to both Starmark and First Tek for the baby to be immediately covered.  Mr. Kurma did not notify First Tek of Baby Boy's birth within 30 days of its occurrence and so the Plan did not by its terms provide for coverage.  As unfortunate as it has turned out to be for a formality to bear such outsized financial consequences, no legal doctrine allows Mr. Kurma to avoid the unambiguous operation of the Plan in this case.  Accordingly, I must GRANT Starmark's motion for summary judgment.

*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE